**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Calvin JOHNSON, Appellee.**

Superior Court of Pennsylvania.

Submitted March 22, 2000.
Filed July 10, 2000.
Reargument Denied Sept. 19, 2000.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Paul L. Hetznecker, Philadelphia, for appellee.

Before POPOVICH, TODD and BROSKY, JJ.

POPOVICH, J.:

¶ 1 This is an appeal from the order entered on September 14, 1998, in the Court of Common Pleas, Philadelphia County, granting Appellee's Motion *in Limine* to preclude admission of an unavailable witness' preliminary hearing testimony at trial. For the following reasons, we affirm.

¶ 2 Appellee was arrested in September of 1993 for the murder of Elvira "Vera" Hayes who was killed in February of 1981.[1] At the time of Ms. Hayes' death, her son L.P. was 2¼ years old. L.P. was found sleeping on the body of his deceased mother as she lay in the second floor hallway of their home.[2] Ms. Hayes' body was stripped naked from the waist down, and her face was swollen and bloodied. Medical examination determined that she had been strangled manually and by ligature. No one was charged with the murder at the time. After her death, Ms. Hayes' sister, Brenda Thompson, adopted L.P.

¶ 3 Thirteen years after Ms. Hayes' death, the police reopened the investigation. L.P. provided a statement to police. L.P. stated that he recalled seeing Appellee lying on top of his mother at the place where Ms. Hayes' body was found. Additionally, Ms. Thompson provided a statement to police in July of 1993. These statements prompted the arrest of Appellee. L.P. and Ms. Thompson, along with several others, testified at the preliminary hearing held on October 15, 1993. The court determined that the Commonwealth established a *prima facie* case against Appellee and bound over the charges against Appellee for trial.

¶ 4 On October 27, 1997, while different issues pertaining to this case were pending on appeal, Ms. Thompson died. On September 8, 1998, Appellee filed a motion *in*

---

1. Appellee was charged also with burglary and criminal trespass.

2. At the time of her death, Ms. Hayes resided with her mother.

*limine* to exclude, among other evidence, the preliminary hearing testimony of Ms. Thompson. On September 14, 1998, the lower court granted Appellee's motion *in limine* as to Ms. Thompson's preliminary hearing testimony. The lower court reasoned that Appellee would be impermissibly prejudiced if Ms. Thompson's testimony was admitted into evidence. The lower court found that Appellee was denied a full and fair opportunity to cross-examine Ms. Thompson during the preliminary hearing because the Commonwealth failed to supply Appellee with the statements Ms. Thompson made to police in February of 1981 and July of 1993 before the preliminary hearing. Trial Opinion, 12/7/98, at 2. This appeal followed.

¶ 5 The sole issue that the Commonwealth presents on appeal is whether the lower court abused its discretion when it refused to admit into evidence Ms. Thompson's preliminary hearing testimony.

¶ 6 In *Commonwealth v. Zugay*, 745 A.2d 639 (Pa.Super.2000), we stated that *our standard of review involving a motion in limine* is as follows:

"A motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered." *Commonwealth v. Johnson*, 399 Pa.Super. 266, 582 A.2d 336, 337 (1990), *aff'd*, 534 Pa. 51, 626 A.2d 514 (1993). Such a ruling is similar to that upon a motion to suppress evidence. *Commonwealth v. Gordon*, 543 Pa. 513, 517, 673 A.2d 866, 868 (1996).[ ]

Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision on such a question absent a clear abuse of discretion. *Commonwealth v. Weber*, 549 Pa. 430, 436, 701 A.2d 531, 534 (1997).

*Id.* [*Commonwealth v. Chmiel*, 558 Pa. 478, 493, 738 A.2d 406, 414 (1999)].

*Zugay*, 745 A.2d at 644–45.

■ ¶ 7 Under both our federal and state constitutions, a criminal defendant has the right to confront and cross-examine witnesses against him at trial. *Commonwealth v. Bazemore*, 531 Pa. 582, 585, 614 A.2d 684, 685 (1992) (citations omitted). However, it is well-established that an unavailable witness' prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the criminal defendant had counsel and *a full opportunity to cross-examine that witness at the prior proceeding. Id.* 614 A.2d at 687 (citation omitted) (emphasis added). The exception to the hearsay rule that permits the admissions of an unavailable witness' prior testimony at a preliminary hearing is "predicated on the 'indicia of reliability' normally afforded by adequate cross-examination. But where that 'indicia of reliability' is lacking, the exception is no longer applicable." *Id.* 614 A.2d at 687 (citations omitted). The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing stage as extensively as he might have done at trial. *Commonwealth v. Cruz–Centeno*, 447 Pa.Super. 98, 668 A.2d 536, 542 (1995) (citation omitted). However, where the defense, at the time of the preliminary hearing, was denied access to vital impeachment evidence, a full and fair opportunity to cross-examine the unavailable witness may be deemed to have been lacking at the preliminary hearing. *Id.*, 668 A.2d at 543 (citing *Bazemore, supra*). The opportunity to impeach a witness is particularly important where the Commonwealths entire case hinges upon the testimony of the unavailable witness. *Commonwealth v. Smith*, 436 Pa.Super. 277, 647 A.2d 907, 913 (1994) (citing *Bazemore, supra*).

¶ 8 The Commonwealth wishes to offer Ms. Thompson's testimony into evidence at trial. Ms. Thompson testified that Ms. Hayes' and Appellee were involved in a

relationship at the time of Ms. Hayes' death, and several months prior to Ms. Hayes' death, Appellee entered Ms. Hayes' mother's home without permission and was charged with criminal trespass. Ms. Thompson testified about seeing scratches on Appellee's hands and arms on the evening of Ms. Hayes' death. She also testified that L.P. told her that he saw Appellee on top of his mother shortly before her death. Her testimony is vital to the Commonwealth's case-in-chief to corroborate L.P.'s testimony. L.P. was two years old at the time of Ms. Hayes' death and is the only witness who was present in the home at that time. Additionally, L.P. lived with Ms. Thompson from his mother's death in 1981 until Ms. Thompson's death. The Commonwealth's case may not hinge entirely upon Ms. Thompson's testimony, but given L.P.'s young age, Ms. Thompson's testimony is obviously crucial to the Commonwealth.

¶ 9 The Commonwealth asserts that Ms. Thompson's preliminary hearing testimony should be admitted into evidence at trial because she is now unavailable to testify at trial and Appellee had both counsel and a full and fair opportunity to cross-examine Ms. Thompson at the preliminary hearing. The Commonwealth asserts that the lower court abused its discretion when it compared the prior statements with the preliminary hearing testimony and mistakenly considered omissions as proper subject matter for cross-examination, misread her testimony to find an inconsistency with her prior statements and ignored Supreme Court caselaw that *only* the withholding of "vital impeachment evidence" deprives a defendant of the ability to conduct a full and fair cross-examination.

¶ 10 Clearly, as a result of her death, Ms. Thompson is "unavailable" for trial, and her testimony from a previous criminal proceeding in a court of record may be used if Appellee had an opportunity to cross-examine her. 42 Pa.C.S.A. 5917. Therefore, the question is whether Appellee had a full and fair opportunity to cross-

examine Ms. Thompson at the preliminary hearing. If Appellee was afforded such an opportunity, Ms. Thompson's testimony should be admissible.

■ ¶ 11 We will first examine the Commonwealth's assertion that the lower court abused its discretion by mistakenly considering omissions as proper subject matter for cross-examination at a preliminary hearing. Ms. Thompson's testimony at the preliminary hearing indicated that she observed scratches on Appellee's forearms after the murder. The Commonwealth asserts that her failure to mention the scratches in her statements to the police in 1981 and 1993 were omissions and not subject to cross-examination. We agree.

■ ¶ 12 It is well-established that for a statement to be used for impeachment, a statement actually must be inconsistent with, and not just different from, trial testimony. Mere omissions from prior statements do not render prior statements inconsistent for impeachment purposes. *Commonwealth v. Elliott*, 549 Pa. 132, 149, 700 A.2d 1243, 1251 (1997). In Ms. Thompson's preliminary hearing testimony, she mentioned seeing scratches on Appellee's hands and arms immediately following Ms. Hayes' death. N.T., 10/15/93, at 126–129. However, she did not mention the scratches in her statements to police in 1981 or 1993. The fact that Ms. Thompson's preliminary hearing testimony contained details not included in the police reports did not make the earlier statements inconsistent with her later testimony. "[M]ere dissimilarities or omissions in prior statements do not suffice as impeachable evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witnesss' testimony to be admissible as prior inconsistent statements." *Cruz–Centeno*, 668 A.2d at 544 (citing *Commonwealth v. McEachin*, 371 Pa.Super. 188, 537 A.2d 883, 891 (1988), quoting *Commonwealth v. Bailey*, 322 Pa.Super. 249, 469 A.2d 604, 611 (1983)). Ms. Thompson's omission of the scratches on Appellee's forearms in the 1981 and

1993 statements did not rise to the level of impeachment as prior inconsistent statements. If this were the only rationale the lower court used to grant Appellee's motion *in limine*, then we would be inclined to reverse and admit Ms. Thompson's testimony into evidence. However, the lower court granted the motion on other grounds, so we will continue our analysis.

¶ 13 Second, the Commonwealth asserts that the lower court abused its discretion by finding an inconsistency in Ms. Thompson's testimony regarding Ms. Hayes' prior drug use.

¶ 14 The Commonwealth relies on *Commonwealth v. Elliott, supra*. In *Elliott*, the preliminary hearing testimony of an unavailable Commonwealth witness was admitted at trial. The defendant appealed arguing that he did not have a full and fair opportunity to cross-examine the witness at the preliminary hearing because three previous inconsistent statements were withheld from the defendant. Our Supreme Court ruled that the defendant was not prejudiced because the inconsistencies were only "three minor discrepancies" between the witnesss' first and third statements to police. Furthermore, our Supreme Court distinguished *Elliott* from *Bazemore* because the witness's testimony was "not critical . . . as that of the witness in *Bazemore*" in that the statements were not relevant to defendant's guilt. However, we find that the present case can be distinguished from *Elliott* and can be compared to *Bazemore* because the withheld inconsistencies were vital to Appellee's case.

¶ 15 In her 1981 police statement, Ms. Thompson was asked whether she was "aware that [Ms. Hayes] was using any kind of drugs." Ms. Thompson answered, "She would smoke marijuana sometimes. About two years ago, she said that her husband Douglas Hayes[3] had started her

to trying 'speed'. She said that she didn't want to get hooked and asked me and my mother to go with her to a drug center." Thompson's Statement to Police, 2/25/81, at 2–3. Ms. Thompson stated further, ". . . Shelton Johnson, a friend of the family told me and my sister Jocelyn that he heard some fellows in a bar talking about my sister's death and they were saying that she was seen with a man named Ronald Mitchell the day she died. Ronald Mitchell is known to sell marijuana." *Id.* at 3. When asked if she knew of anyone that Ms. Hayes used to get her drugs, she responded, "The only one that I know of was Douglas Hayes her husband." *Id.* at 3.

¶ 16 At the preliminary hearing, Appellee . asked Ms. Thompson, "Did [Ms. Hayes] ever tell you that she was using drugs during that time? Did she say, 'I'm on drugs, I'm using drugs?'" Ms. Thompson replied, "No." N.T., 10/15/93, at 151.[4]

¶ 17 The Commonwealth argues that these statements were entirely consistent and additionally were not vital to the determination of the *prima facie* case against Appellee. While we agree that those statements were not vital to the establishment of a *prima facie* case, we conclude that they were vital impeachment evidence for trial purposes.

¶ 18 The issue underlying these statements is Ms. Thompson's knowledge of Ms. Hayes' drug use. In her statement to police in 1981, Ms. Thompson acknowledged that Ms. Hayes used marijuana. In addition, two years prior to her death, Ms. Hayes herself told Ms. Thompson that she had used "speed" and was worried about becoming an addict. During the preliminary hearing, Ms. Thompson responded in the negative as to whether Ms. Hayes had told her that she was using drugs in the three months preceding her death. We

---

3. At the time of her death, Douglas and Ms. Hayes were separated.

4. "At that time" referred to the couple of months immediately preceding Ms. Hayes' death, specifically December of 1980 through February of 1981.

find that the lower court did not abuse its discretion in finding that these statements are inconsistent.

¶ 19 The medical examination of Ms. Hayes revealed drugs in her system at her time of death. Ms. Thompson had information regarding Ms. Hayes' prior drug use, including from whom she received her drugs. This information was contained in her 1981 statement. When Appellee attempted to elicit information regarding Ms. Hayes' drug use, Ms. Thompson denied knowing of Ms. Hayes' drug use. Appellee could have used this statement to impeach Ms. Thompson during the preliminary hearing. In the 1981 statement Ms. Thompson stated that to her knowledge, Ms. Hayes received drugs only from Douglas Hayes. We find that the lower court did not abuse its discretion in finding that such information was vital impeachment evidence for trial. Ms. Thompson's inconsistent statements presented a completely different view of her knowledge of Ms. Hayes' drug use. When the Commonwealth failed to disclose the previous statements to Appellee, it denied the defense a full and fair opportunity to cross-examine. *Cf. Bazemore, supra* (finding that defendant did not have a full and fair opportunity to cross-examine a witness at a preliminary hearing when the Commonwealth failed to provide defense with previous witness' statements that represented a different version of the events).

¶ 20 At the preliminary hearing, Appellee attempted to show that evidence known by Ms. Thompson pointed to Douglas Hayes as the person who committed the crime. In this case, the following exchange took place during Ms. Thompson's testimony at the preliminary hearing:

BY APPELLEE COUNSEL:

Q. Was Doug, was he capable of doing it?

COMMONWEALTH: Objection.

THE COURT: Sustained.

BY APPELLEE COUNSEL:

Q. You were aware of the problems Vera was having with Doug, were you not?

COMMONWEALTH: Objection, relevance.

THE COURT: Was she aware of problems?

APPELLEE COUNSEL: That Vera was having with Doug during this time period.

BY APPELLEE COUNSEL:

Q. Were you not?

COMMONWEALTH: Objection to the form of that question.

THE COURT: Sustained.

BY APPELLEE COUNSEL:

Q. You were aware that Doug had beaten up Vera a number of times; is that correct.

COMMONWEALTH: Objection.

THE COURT: Sustained.

BY APPELLEE COUNSEL:

Q. Ma'am, after the separation of Doug and Vera, you were aware that Doug had beaten up Vera; is that correct?

COMMONWEALTH: Objection.

THE COURT: Sustained.

BY APPELLEE COUNSEL:

Q. While Vera was living at your mom's house after the separation, did Vera tell you—

THE COURT: Save it for trial.

BY APPELLEE COUNSEL:

Q. Ma'am, what was your state of mind in regard to Doug and Vera based upon what Vera had told you?

COMMONWEALTH: Objection.

THE COURT: Sustained.

N.T., 10/15/93, at 202–204.

■ ¶ 21 During the preliminary hearing, Appellee's questioning of Ms. Thompson about Ms. Hayes' relationship with Douglas Hayes was unsuccessful because the Commonwealth objected, and the judge sustained the objections. The court and the Commonwealth precluded Appellee from this line of cross-examina-

 

tion. We agree with the lower court that the sustaining of the Commonwealth's objections denied Appellee a full and fair opportunity to cross-examine Ms. Thompson regarding Ms. Hayes' past relationships. *Contrast Commonwealth v. Douglas*, 558 Pa. 412, 427, 737 A.2d 1188, 1196 (1999) (holding that defendant had a full and fair opportunity to cross-examine the now unavailable witness at the preliminary hearing when neither the court nor the Commonwealth precluded the cross-examination). Appellee would be prejudiced if Ms. Thompson's testimony were admitted into evidence.

¶ 22 Additionally, in the 1981 statement, Ms. Thompson mentioned that a person had paid someone to kill Ms. Hayes. If Appellee had this statement, he may have been able to cross-examine Ms. Thompson about the alleged "contract" on Ms. Hayes. We find that the lower court did not abuse its discretion in finding that Appellee did not have a full and fair opportunity to cross-examine Ms. Thompson because the Commonwealth failed to give Appellee vital impeachment evidence.

¶ 23 Third, the Commonwealth argues that the lower court abused its discretion by ignoring precedent that only the withholding of "vital impeachment evidence" deprives a defendant of the ability to conduct a full and fair cross-examination. We disagree.

¶ 24 The lower court did not ignore the established principle that only the withholding of vital impeachment evidence deprives a defendant of the ability to conduct a full and fair cross-examination. The lower court determined that the evidence withheld was impeachment evidence. For the reasons stated above, we agree.

¶ 25 Given the significance of Ms. Thompson's testimony to corroborate that of L.P., her credibility has become a key issue for trial. Unfortunately, the unavailability of Ms. Thompson at trial foreclosed Appellee's opportunity to impeach her at trial. The Commonwealth's failure to provide Ms. Thompson's previous statements foreclosed Appellee's opportunity to address the inconsistencies at trial and the other statements that imply a person other than Appellee may have committed the crime. *Cf. Smith, supra* (holding that the transcript by unavailable witness at preliminary hearing where no cross-examination took place was inadmissible where defense did not have ability to impeach or attack credibility and bias of only eye witness because Commonwealth failed to disclose prior record of witness).

¶ 26 Applying the standard our Supreme Court established in *Bazemore* to the present case, we hold that the lower court did not abuse its discretion in finding that Appellee was denied a full and fair opportunity to cross-examine Ms. Thompson at the preliminary hearing.

¶ 27 Order affirmed.