**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Thomas McCANDLESS, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 9, 2001.

Filed June 6, 2001.

Reargument Denied Aug. 8, 2001.

Michael Gehring, Assistant District Attorney, Philadelphia, for Com., appellant.

Michael C. Schwartz, Philadelphia, for appellee.

Before: STEVENS, MONTEMURO *
and BECK, JJ.

BECK, J.

¶ 1 Pursuant to a retrial, the Commonwealth appeals the trial court's pre-trial decision to exclude the preliminary hearing testimony of an unavailable Commonwealth witness. The new trial was awarded to appellee/defendant by the Third Circuit Court of Appeals upon appellee/defendant's petition to the federal court for *habeas corpus* relief. We conclude that the trial court erred in denying admission of the unavailable witness's testimony. Thus, we vacate and remand.

* Retired Justice assigned to Superior Court.

¶ 2 Thomas McCandless was found guilty of first-degree murder in 1982. The evidence against him included the preliminary hearing testimony of John Barth, whom the trial court deemed unavailable at time of trial. On direct appeal from his judgment of sentence, McCandless claimed that the trial court erred in admitting Barth's preliminary hearing testimony. The basis for the claim was twofold. First, McCandless claimed that the Commonwealth did not establish, as was required, that Barth was unavailable (claim # 1). Second, McCandless claimed that even if unavailability was established, he was not given an adequate opportunity to cross-examine Barth at the preliminary hearing, thus precluding admission of the testimony (claim # 2). Both errors, alleged McCandless, constituted a violation of his rights under the Sixth Amendment to the United States Constitution, specifically, the Confrontation Clause.

¶ 3 McCandless relied on the well-established rule that in order for an absent witness's preliminary hearing testimony to be admissible at trial, 1) the witness must be unavailable despite the Commonwealth's good faith effort to procure him for trial and 2) the defendant must have had a full and fair opportunity to cross-examine the witness at the preliminary hearing. *See Commonwealth v. Bazemore,* 531 Pa. 582, 614 A.2d 684, 685 (1992) (relying on *Commonwealth v. Mangini,* 493 Pa. 203, 425 A.2d 734 (1981)).

¶ 4 This court rejected McCandless's claim and adopted the trial court's assessment of the issue. In its opinion, the trial court found that the Commonwealth made a good faith effort to make Barth available for trial and, further, that McCandless had a full and fair opportunity to cross-examine Barth at the preliminary hearing. In

making the latter finding, the court explicitly considered McCandless's claim that he was "prevented from asking [Barth] questions about any agreements or deals he had made with the Commonwealth, any prior statements he had given to the authorities, and any prior convictions for crimes involving dishonesty." Trial Court Opinion, 5/17/85, at 28. The trial court found, upon review of the record, that Barth's statement, deal and criminal history were adequately explored on cross-examination.

¶ 5 Finding no success in this court, McCandless thereafter sought *allocatur,* but our supreme court denied his request. In September of 1992, Barth committed suicide while in a Philadelphia jail cell. In 1996, McCandless filed a *habeas corpus* petition in federal district court. Again he challenged the admission of Barth's preliminary hearing testimony, once more asserting claims # 1 and # 2. The district court denied relief, but on appeal, the Third Circuit Court of Appeals ruled that McCandless was entitled to a new trial because it found merit in claim # 1, that Barth was not legally unavailable. *McCandless v. Vaughn,* 172 F.3d 255, 259 (3d Cir.1999). The federal appeals court held that the Commonwealth *did not* make a good faith effort to procure Barth's presence at trial, thus the state court finding that Barth was unavailable was flawed. *Id.* Despite the fact that claim # 2, the issue of "full and fair opportunity," was also before the federal appeals panel, it declined to address it. Its rationale for doing so was based on procedural rules and reflected the limited nature of federal *habeas* relief.

¶ 6 McCandless, as a prisoner in state custody, was required to establish that he had exhausted his remedies at the state level in order to be entitled to review in the federal court system. 28 U.S.C. § 2254(b). A federal *habeas* petitioner satisfies the exhaustion requirement when he "fairly presents" his claim to the state's highest court or, failing such a fair presentation, he "establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his ... default." *Id.* at 259 (citations omitted).

¶ 7 The Third Circuit Court of Appeals held that McCandless clearly exhausted his state remedies with respect to claim # 1. Thus, he was entitled to federal *habeas* review of that claim and the federal appellate court, in fact, granted him relief on that basis. However, the federal court found that the exhaustion requirement was not established with respect to claim # 2. In analyzing the issue, it ultimately determined that resolution of claim # 2 was unnecessary in any event:

> Because we find a Confrontation Clause violation based upon the prosecution's failure to establish Barth's unavailability, we find it unnecessary to address McCandless's additional claim that admission of Barth's testimony violated the Confrontation Clause because he did not have an adequate opportunity to cross-examine Barth at the preliminary hearing. In his brief, McCandless conceded that he did not present this claim to the Pennsylvania Supreme Court and that it is procedurally defaulted. He attempted, however, to excuse this default on the ground that his counsel had been ineffective in failing to raise this claim in his allocatur petition to the Pennsylvania Supreme Court. Because the same counsel had included this argument in McCandless's Superior Court brief, the District Court concluded that the failure to reassert it was a strategic decision and not ineffective assistance of counsel. In rebuttal at oral argument, McCandless alternatively argued that he had indeed "fairly presented" this claim be-

cause he had included it in his only state appeal as a matter of right to the Superior Court. McCandless requested this Court to consider whether "exhaustion" requires an applicant to present claims in state discretionary appeals. We are not free to do so. This Court's precedents indicate that habeas petitioners must present their federal claims to the state's highest court.

*Id.* at 264 n. 6.[1]

¶ 8 Apparently, the federal appellate court declined to address claim # 2 based on some combination of procedural default and irrelevance, but its ruling was nonetheless clear: it "address[ed] *only* the issue of whether Barth was constitutionally unavailable." *Id.* at 264 (emphasis supplied).

¶ 9 The fact that the federal appeals court declined to address claim # 2 is particularly puzzling in light of the fact that Barth had been dead for some four years prior to the filing of the *habeas* petition and for nearly seven years on the date the court issued its opinion. Of course, we have no way of knowing whether the federal court was aware of Barth's death. In any event, the federal *habeas* relief granted to McCandless was a new trial and, ultimately, he appeared before the Philadelphia Court of Common Pleas for that purpose. The Commonwealth again sought to use Barth's preliminary hearing testimony and McCandless once more sought to preclude it.

¶ 10 Naturally, Barth's unavailability was not at issue as his death made him undeniably unavailable. Rather, McCandless's motion in *limine* focused on claim # 2, the full and fair opportunity issue. He asked the trial court to deny admission of Barth's testimony on that basis. The trial court held a hearing on the motion and ultimately ruled that McCandless had not been given a full and fair opportunity to cross-examine Barth. The trial court found that preclusion was warranted because at the time of Barth's cross-examination, McCandless did not have access to Barth's statement to police nor did he have copies of Barth's criminal history or the agreement Barth struck with the Commonwealth in exchange for his testimony.

¶ 11 The Commonwealth appealed from the order granting the motion in *limine* and the issue is now before us.

¶ 12 The Commonwealth argues that the trial court was without authority to consider claim # 2 as it had already been decided against McCandless by the first trial court and thereafter affirmed by this court on direct appeal. The Commonwealth's position is based on the doctrine of the law of the case. We agree that the doctrine applies here.

¶ 13 "The [law of the case] doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not

1. After the Third Circuit granted relief to McCandless, the United States Supreme Court confirmed this requirement in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). However, the *O'Sullivan* rule recently was interpreted as inapplicable where a state's highest court explicitly declares that exhaustion *does not* require a petitioner to present to the state high court a claim already decided against the petitioner by the intermediate appellate court. *See Mattis v. Vaughn*, 128 F.Supp.2d 249, (E.D.Pa. 2001). Our supreme court made such a declaration last year. *See In re: Exhaustion of State Remedies in Criminal and Post Conviction Relief Cases*, No. 218 Judicial Administration Docket No. 1 (per curiam) (May 9, 2000) (following adverse order from Superior Court, petition for allowance of appeal no longer required to exhaust state court remedies for purposes of federal habeas proceedings). The *Mattis* court, however, ruled that Pennsylvania Supreme Court Order 218 was not retroactive. *Mattis, supra.*

reopen questions decided by another judge of that same court or by a higher court in earlier phases of the matter." *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1331 (1995). Recently, in *Hutchison v. Luddy*, 763 A.2d 826 (Pa.Super.2000), we observed that:

This tenet of the law of the case doctrine has long been expressed with regard to remand situations .... [as] our Supreme Court stated:

A lower court is without power to modify, alter, amend, set aside or in any manner disturb or depart from the judgment of the reviewing court as to any matter decided on appeal ... Under any other rule, litigation would never cease, and finality and respect for orderly process of law would be overcome by chaos and contempt.

*Id.* at 835 (citations omitted).

¶ 14 In this case, the trial court reopened a question (claim # 2) that was already decided by another judge of the same court and affirmed by a higher court. The issue of full and fair opportunity was raised in the court of common pleas, reviewed by that court and decided against McCandless. Thereafter, this court expressly adopted the findings of the common pleas court on that precise issue and affirmed its decision. Although the Third Circuit later held that an error occurred in the state court proceedings and remanded the matter for a new trial, the federal appeals court explicitly declined to address the full and fair opportunity issue. As a result, the resolution of that issue was left undisturbed by the federal court and, upon remand, the trial court was without authority to revisit it. *Hutchison, supra.* The law of the case demands that this court's prior ruling be sustained by the trial court on remand. *Id.*

¶ 15 The dissent would find that the grant of *habeas* relief somehow serves to reopen the state case with respect to other issues. The dissent states that once *habeas* relief is ordered, "the *status quo ante* no longer obtains—the state courts had already denied relief on the grounds relied upon by the federal court." Dissenting Opinion at 724.

¶ 16 The dissent's position necessarily requires it to abandon the long-standing rule of the "law of the case." But its rationale in doing so is not grounded in case law, statute or rule. Rather, the dissent simply determines, without citation, that a grant of *habeas* relief so profoundly affects the law of the case, "it does not govern." *Id.* at 725. In reaching this conclusion, the dissent interprets the federal circuit court's decision as "indirectly" and "implicitly" requiring such a result. *See id.* at 724 ("thus, *by indirection,* the full and fair cross examination issue is decided ... *implicit in the remand order is the suggestion* that ... conviction is not possible absent some new or different evidence against Appellee, or other remedial measure") (emphasis supplied). We do not agree.

¶ 17 The dissent states that the first trial court's resolution of claim # 2 cannot stand because it would "repeat a performance already determined to have been faulty." *Id.* However, the federal appellate court expressly declined to decide whether the state court's treatment of claim # 2 was faulty. Instead, it found that claim # 2 was not properly before it and further, an assessment of the state court's resolution of claim # 2 was unnecessary in light of the grant of relief on other grounds.

¶ 18 In essence, the dissent here concludes that where a federal court grants *habeas* relief on a discrete issue, the prior decisions of the state trial and appellate

718

courts are rendered unreliable. Logically extended, the dissent's rationale would permit McCandless to relitigate other issues the federal court expressly declined to address, such as the admission of alleged hearsay and testimony regarding the "corroboration" condition of Barth's agreement with the prosecution. Those issues, like claim # 2, were not addressed by the federal court.

¶ 19 The state trial court is no more authorized to reconsider claim # 2 than it would be to reconsider any other issue the federal court left untouched. A grant of *habeas* relief simply cannot invalidate every holding of the state court in a given case.

■■■ ¶ 20 The Writ of *Habeas Corpus* is a distinct creature of federal constitutional law. It "permits petitioners to contest the validity of their detention in independent, civil proceedings in the federal forum" by "offer[ing] a vehicle for the federal relitigation of federal questions" despite the existence of a final judgment in state court. Larry W. Yackle, *Explaining Habeas Corpus,* 60 N.Y.U.L.Rev. 991, 992–93 (1985). But the federal court's power to engage in *habeas corpus* review is strictly limited in a myriad of ways primarily because "[r]eexamination of state convictions on federal *habeas* 'frustrate[s] . . . "both the states" sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *McCleskey v. Zant,* 499 U.S. 467, 491, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Interests of comity and finality are so significant in the context of federal *habeas* review that relief is summarily denied if the petitioner fails to comply with state procedural rules. *Teague v. Lane,* 489 U.S. 288, 308, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Countless commentators have written about the United States Supreme Court's narrow interpretation of federal *habeas*

law as well as Congress's ever-broadening restrictions on its use and scope. *See e.g.,* Louis M. Natali, *New Bars in Pennsylvania Capital Post Conviction Law and their Implications for Federal Habeas Corpus Review,* 73 Temple L.Rev. 69 (2000); Brian M. Hoffstadt, *How Congress Might Design a Leaner, Meaner Writ of Habeas Corpus,* 49 Duke L.J. 947 (2000); Wayne A. Logan, *Federal Habeas in the Information Age,* 85 Minn.L.Rev. 147 (2000); Anne M. Voigts, *Narrowing the Eye of the Needle: Procedural Default, Habeas Reform and Claims of Ineffectiveness of Counsel,* 99 Columbia L.Rev. 1103 (1999). Federal courts indeed approach state *habeas* cases in an extremely deferential manner. *See Williams v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); *O'Sullivan, supra; Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Teague, supra.*

■■■ ¶ 21 Because of the narrow limits imposed on federal *habeas* law by both the legislature and the courts, we find that a grant of federal *habeas* relief does not annul the doctrine of the law of the case. Instead, the law of the case survives the grant of *habeas* relief on any issue not addressed by the federal court.

■■■ ¶ 22 As the dissent observes, however, even where the law of the case appears to apply, it may be avoided if exceptional circumstances exist. These circumstances include an intervening change in the facts, evidence or controlling law or the existence of a prior holding that is so clearly erroneous as to create a manifest injustice if followed. *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326, 1332 (1995). The dissent concludes that "recent case law . . . represent[s] changes in controlling authority" and "illuminate[s] the injustice" that would be created if the law of the case were followed here, and relies on *Com-*

*monwealth v. Strong,* 563 Pa. 455, 761 A.2d 1167 (2000) and *Commonwealth v. Johnson,* 758 A.2d 166 (Pa.Super.2000) for support.

¶ 23 In *Johnson,* a panel of this court considered the preliminary hearing testimony of a prosecution witness in order to determine whether it should be admitted at trial. Using the well-established standard of "full and fair opportunity," the panel determined that admission at trial was barred because the appellant had been denied access to prior inconsistent statements by the witness that contained "vital impeachment evidence." The court noted the distinction between statements with only "minor discrepancies" and those with inconsistencies that are "vital" to the accused's case. *Johnson, supra,* at 170–71.

¶ 24 *Johnson* does not represent a change in controlling law. Rather, it reaffirms the rule that any time an accused can establish that he was denied a full and fair opportunity to cross-examine a witness at his preliminary hearing, the preliminary hearing testimony is inadmissible at trial, despite the unavailability of the witness. The standard set out in *Johnson* was applied in this case, first by the trial court and thereafter by a panel of this court. The conclusion of both courts was that McCandless indeed was afforded a full and fair opportunity to cross-examine Barth.

¶ 25 The holding in *Johnson* does not tend to prove that the prior ruling in this case was "clearly erroneous," and would result in a "manifest injustice" if upheld. In its opinion that overturned the ruling of the first trial court, the instant trial court did not rely on any inconsistencies in Barth's statement to support its conclusion that Barth's testimony should be excluded.

The court offered no analysis of the statement's substance and relied solely on the fact that McCandless did not have an opportunity to cross-examine Barth on the statement. Although the court granted McCandless's motion *in limine,* it did not explain why it found that McCandless's lack of access to the statement was detrimental to him. Neither the trial court nor McCandless offer a basis for finding that "vital impeachment evidence," such as the type proffered in *Johnson,* was withheld in this case.

¶ 26 Although the type of evidence that was present in *Johnson* does not exist in the record before us, what is present is the clear holding of the first trial court that the requirement of "full and fair opportunity" was satisfied. Also part of the record is this court's affirmance of that holding.[2] In light of the above, we cannot find that "the prior holding was clearly erroneous such as to create a manifest injustice if followed."

¶ 27 Nor are we persuaded that the *Strong* case commands a different result. In *Strong,* the Commonwealth failed to disclose and, in fact, denied the existence of, an agreement with its witness. Rather, the prosecution "assured [the] appellant that no deal had been made in exchange for [the witness's] ... testimony" and the witness himself testified that he was not testifying "in exchange for favorable treatment by the Commonwealth." *Strong, supra,* at 460, 761 A.2d at 1170. Over a decade later, the appellant learned that a deal in fact had been struck, although it had not been reduced to writing. Our supreme court, relying on the long established rule set out in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215

---

2. We observe that this court, in its Memorandum affirming the decision of the trial court, made frequent citation to the transcripts of the proceedings below and the trial court opinion, indicating that the first trial court, as well as this court, reviewed and considered Barth's direct and cross-examination at the preliminary hearing.

(1963), held that the appellant was entitled to know about the deal and the Commonwealth's failure to reveal its communications with the witness constituted a due process violation.

¶ 28 Like *Johnson*, *Strong* does not represent a change in controlling law, only a reaffirmation of existing law. Nor does its holding prompt us to conclude that the prior holding in this case was clearly erroneous. In her opinion, the instant trial judge merely relied on McCandless's lack of "a copy of the agreement" between Barth and the Commonwealth. She did not refer to the manner in which McCandless would have been aided by a copy of same and, more importantly, she did not address the fact that the deal between Barth and the Commonwealth was explored at the preliminary hearing. The record reveals that Barth admitted he implicated McCandless and another man only after Barth himself was arrested for the murder and bound over for trial. Further, Barth conceded that he had not been brought to trial because he had an agreement with the district attorney. He described the agreement as follows:

Q: What do you understand the agreement to be regarding the homicide charges against you and your testimony today?

A: That the charges of murder be dropped against me.

\* \* \*

Q: Is it your understanding that all you have to do is testify against Mr. Hartey

and Mr. McCandless, and then the charges against you will be dropped?

A: Yes.

Transcript, Preliminary Hearing, 4/1/82, at 34–35.

¶ 29 Barth's candid explanation of his agreement with the Commonwealth makes this case far different from *Strong*. Here, McCandless's attorney was successful in eliciting the very type of evidence he was entitled to elicit, *i.e.*, Barth's self-serving motive for testifying against McCandless. In light of Barth's admissions, we do not see how McCandless was prejudiced by the fact that his attorney did not have a copy of that agreement.

¶ 30 The first trial court in this case explicitly found that Barth's testimony at the preliminary hearing, wherein he revealed his agreement with the Commonwealth, satisfied the requirement of "full and fair opportunity." This court thereafter affirmed that precise holding, based on its review and assessment of the record.

¶ 31 On the record before us, which includes the findings of fact and conclusions of law of the first trial court and the Memorandum Opinion of this court, we find a departure from the doctrine of the law of the case is inappropriate.[3]

¶ 32 We offer no opinion about whether the reasoning and analysis of the first trial court was superior or inferior to that of the second. We merely state that the second court was without authority to analyze the issue anew. We also offer no opinion on whether the federal appellate

---

**3.** In addition, we would not find that the Commonwealth's conduct subsequent to the federal remand serves as a basis for the trial court to "revisit the admissibility of Barth's testimony." Dissenting Opinion at 8. The Commonwealth's request for an extension of time in which to try McCandless was made in light of the trial court's indication that it would consider the full and fair opportunity issue on its merits. McCandless has never alleged, nor does the dissent find, that the Commonwealth is precluded from retrying McCandless because this appeal has not been decided within the time frame set by the federal court. The issue, therefore, is irrelevant to the question before us, *i.e.*, the application of the law of the case after remand from a federal grant of habeas relief.

court would have found error in the state court's resolution of the full and fair opportunity issue, had it determined that review thereof was appropriate. We merely observe that in declining to do so, the federal court's decision had no impact on the ruling as it stands in the state court.

¶ 33 In summary, we find that the preliminary hearing testimony of Barth is admissible at trial. The two prongs for testing admissibility are present. First, there is no question that Barth, having died, is unavailable. Second, the conclusion that McCandless had a full and fair opportunity to cross-examine Barth at the preliminary hearing is the law of the case, undisturbed by the federal court's grant of *habeas corpus* relief.

¶ 34 A federal grant of *habeas* relief is restricted to the issue upon which it is based. On all other issues, the law of the case applies and, barring any reason to depart from it, controls. Thus, the trial court was precluded, based on the doctrine of the law of the case, from revisiting the issue of "full and fair opportunity." The order granting the motion in *limine* must be vacated and the matter remanded for the new trial awarded McCandless by the federal *habeas* court.

¶ 35 Order vacated; matter remanded for further proceedings. Jurisdiction relinquished.

¶ 36 MONTEMURO, J. files a Dissenting Opinion.

MONTEMURO, J., Dissenting.

¶ 1 I respectfully dissent.

¶ 2 On the afternoon of August 11, 1980, police received a radio call that a shooting had occurred in a garage in Philadelphia. An eyewitness had reported that after hearing shots fired, he saw the victim crash through the door of the garage, collapse on the sidewalk, pick himself up and flee around the corner, coming to a stop when he fell against a blue Buick parked nearby. A second man, later identified as John Barth, ran from the garage, then turned to assist a third man in freeing a blue Chevrolet from the collapsed garage door. The third man drove away in the Chevrolet, and the witness saw Barth run to where the victim lay bleeding, grab him by the neck and shake him until the witness intervened.[4] Barth then entered the Buick and sped away. The victim later died of two gunshot wounds.

¶ 3 Barth was arrested for the murder,[5] and after a preliminary hearing held for court, but was later released in exchange for a statement which implicated Appellee herein and another man, Patrick Hartey, both of whom were extradited from New Jersey where they were being held on other unrelated charges. Barth, who offered the only eyewitness testimony to the shooting inside the garage, reported at the preliminary hearing in April of 1982 that Appellee had pistol whipped the victim and then shot him.[6] However, Barth did not appear at Appellee's August 1982 trial; after a hearing he was declared unavailable, and his preliminary hearing testimony was read into the trial record. Apparently, sometime in September of 1992 John

---

4. During the preliminary hearing, Barth's version of the story omitted this incident entirely. Barth described the victim as lying motionless on the ground next to the car in a pool of blood, and holding the wheel, and himself is having stepped over the victim before driving away.

5. At the time of his arrest, Barth identified himself as Appellee.

6. Apparently the shooting was intended to prevent the victim from testifying against Appellee in a matter involving car theft charges brought by the victim.

Barth hanged himself in a prison cell in Philadelphia.[7]

¶ 4 Pursuant to the jury's verdict, Appellee was sentenced to life imprisonment;[8] on direct appeal this Court, *per* Wickersham, Beck and Hoffman, JJ.,[9] affirmed the judgment of sentence for murder, and his petition for allowance of appeal to the Pennsylvania Supreme Court was denied.

¶ 5 In January of 1996, Appellee filed a *pro se* petition for post conviction relief which was denied after Appellee requested that it be withdrawn. At approximately the same time, Appellee filed a *habeas corpus* petition in the United States District Court; the petition was denied in March of 1997. On review, the Third Circuit Court of Appeals reversed and remanded with instructions that unless Appellee was retried and convicted within a reasonable time,[10] later determined to be 120 days from July 30, 1999, that is, November 29, 1999, he should be released. The Commonwealth's request for a stay of this order, filed November 26, 1999, was denied.[11]

¶ 6 The case was remanded to the Court of Common Pleas and trial was scheduled to begin on or about November 17, 1999. On October 20, 1999, Appellee filed the instant motion *in limine* to prevent the introduction of Barth's preliminary hearing testimony. After a hearing, the motion was granted on November 10, 1999. This appeal followed, raising the sole issue of whether the trial court abused its discretion in refusing to admit the witness' testimony despite previous rulings by the trial court and this Court[12] in favor of its admission.

¶ 7 To assess the propriety of the denial of a motion *in limine*, we apply the evidentiary abuse of discretion standard, *Commonwealth v. Zugay*, 745 A.2d 639, 645 (Pa.Super.2000), that is, we will not reverse the trial court absent a finding that its decision was an abuse of discretion. *Commonwealth v. Puksar*, 559 Pa. 358, 740 A.2d 219, 225 (1999). As the trial court points out, "prior sworn testimony of a witness is admissible at a later proceeding where the witness is unavailable if the defense has been provided a full and fair opportunity for cross examination." (Trial Ct.Op. at 5) (citing *Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771, 779 (1972)). *See Commonwealth v. Bazemore*, 531 Pa. 582, 614 A.2d 684, 685 (1992).

¶ 8 The test for admissibility of preliminary hearing testimony is based on the right, under both the state and federal constitutions, to confront and cross exam-

---

7. The trial court notes that although both sides agree that Barth is dead, no death certificate or date of death has ever been provided.

8. Hartey was tried with Appellee, convicted of murder and sentenced to life imprisonment also.

9. *Commonwealth v. McCandless*, No. 01417 PHL 1984, unpublished memorandum (Pa.Super. filed April 1, 1986).

10. *McCandless v. Vaughn*, 172 F.3d 255 (3d Cir.1999).

11. *McCandless v. Vaughn*, 1999 U.S.Dist. LEXIS 19109 (Dec. 14, 1999).

12. The Majority observes that this Court's treatment of the trial court's decision concerning whether the defense had been given a full and fair opportunity to cross examine Barth during the preliminary hearing, includes "frequent citation to the transcript of the proceedings below and the trial court opinion, indicating that the first trial court, as well as this court reviewed and considered Barth's direct and cross-examination at the preliminary hearing." (Majority Opinion at 719). This Court affirmed on the basis of the trial court Opinion as to this issue, and added only that the Commonwealth also moved for the admission of John Barth's preliminary hearing testimony under the common law, and not solely under 42 Pa.C.S.A. § 5917.

ine witnesses. *Bazemore, supra* at 685. Two co-equal components comprise the standard: (1) the actual unavailability of the witness despite good faith efforts of the state to produce him, and (2) the validity of his cross examination, that is, whether it was "full and fair," so as to assure reliability. *Id.; see also Commonwealth v. Smith,* 436 Pa.Super. 277, 647 A.2d 907, 911 (1994). Only the second of these is at issue here, since the Third Circuit focused solely on the question of whether, at the time of trial, the witness was actually unavailable for purposes of the admissibility rule.

¶ 9 The *habeas* court found that because the Commonwealth failed to exercise due diligence in procuring Barth's appearance at trial, he was not constitutionally unavailable; thus the use of his preliminary hearing testimony violated Appellee's right to confrontation under the Sixth Amendment to the United States Constitution. Conditional *habeas* relief, that is, discharge absent retrial and conviction within a reasonable time, was accordingly granted. The Third Circuit deliberately and specifically declined to address whether the witness had been subject to full and fair cross examination at the preliminary hearing because, "in his brief, McCandless conceded that he did not present this claim to the Pennsylvania Supreme Court and that it is procedurally defaulted." *McCandless,* 172 F.3d at 264 n. 6.[13] The Court then observed that although Appellee attributed the default to counsel's ineffectiveness in failing to include this claim in his petition for *allocatur* to the Pennsylvania Supreme Court, it had appeared in his appeal to this Court; therefore the omission had been a strategic decision. In any event, *the Court noted that there was no need to assess the* full and fair cross examination prong of the test, because it had already determined that the Confrontation Clause had been violated, *Id.* at 265 n. 6.

¶ 10 The Majority finds that because the original trial court judge ruled that the defense had been afforded a full and fair opportunity for cross examination of the witness during the preliminary hearing, and this decision was affirmed on appeal, *Commonwealth v. McCandless,* No. 01417 PHL 1984, unpublished memorandum (Pa.Super. filed April 1, 1986), the law of the case governs and the trial court herein erred in refusing to acknowledge the previous result. However, this argument fails to acknowledge any effect on the law of the case accomplished by the circumstances leading to the reexamination, *viz.,* the grant of a writ of *habeas corpus.*

¶ 11 My analysis begins with the declaration of the United States Supreme Court, albeit made in a different context, that "[t]he writ of habeas corpus is a major exception to the doctrine of res judicata, as it allows relitigation of a final state-court judgment disposing of precisely the same claims." *Lehman v. Lycoming County Children's Services,* 458 U.S. 502, 513, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982). The Third Circuit here reiterated that under 28 U.S.C. § 2254(a), "[f]ederal courts have the power to entertain habeas corpus applications by persons in state custody claiming that they '[are] in custody in violation of the Constitution or laws or treaties of the United States.' " *McCandless,* 172 F.3d at 260. On mixed questions of law and fact, of which the reliability requirement of the Confrontation Clause is one, *id.* at 265, and pure questions of law, the federal courts of appeal exercise plena-

---

**13.** The Commonwealth makes no waiver argument here, nor does it now contest either substantively or procedurally the conclusion that Barth was not constitutionally unavailable at the time of Appellee's trial.

ry review over state court conclusions. *Id.* at 260.

¶ 12 Once *habeas corpus* relief has been granted, the rule becomes that [t]he discharge of a petitioner on habeas corpus by a court of competent jurisdiction conclusively settles that he is not liable to be held in custody on the state of facts existing at the time. The order or judgment of discharge is inclusive in his favor that he is illegally held in custody, and is ... **res judicata of all issues of law and fact necessarily involved in that result.**" 39 Am.Jur.2d *Habeas Corpus* § 192 (1999) (emphasis added). Thus, by indirection, the full and fair cross examination issue is decided, as the *Bazemore* test requires that both criteria, unavailability and proper cross examination, be satisfied before preliminary hearing testimony may be submitted at trial.

¶ 13 The Majority's position tacitly denies that the federal court's decision to grant *habeas* relief produces any consequences at all. But as the remand itself makes clear, once a constitutional violation is discovered and relief ordered, the *status quo ante* no longer obtains—the state courts had already denied relief on the grounds relied upon by the federal court. To treat the federal court's grant of the conditional corrective as an invitation to repeat a performance already determined to have been faulty would eviscerate the notion that unconstitutionality may be redressed, and/or that retrial pursuant to a grant of *habeas corpus* relief must have a curative effect.

¶ 14 For the same reason, implicit in the remand order is the suggestion that since the admissibility test is bipartite, and since the initial portion of the test, the unavailability of the witness, has been conclusively decided, retrial leading to conviction is not possible absent some new or different evidence against Appellee, or other remedial

measure. Indeed, the Third Circuit says as much, albeit as *dictum,* noting during its recitation of facts that the circumstances of Barth's statement make a full and fair cross examination of him "of crucial importance" to Appellee, and a matter in which he has an "acute interest." *McCandless,* 172 F.3d at 266. The Commonwealth has failed even to suggest that it is capable of presenting anything other than the questionable evidence elicited through Barth's preliminary hearing testimony. Further, although Barth did become actually unavailable, the unconstitutionality attaching at the time of Appellee's trial has not been remedied. To decide otherwise would contradict the notion that relief for violation of individual rights may be reached through *habeas corpus* proceedings. Accordingly, the law of the case handed down by the state courts does not govern, as a critical component of that law has been disqualified: Barth's unavailability now does not cure the constitutional violation committed heretofore. The trial court therefore properly reviewed the subject of the motion *in limine.*

¶ 15 Even if the trial court should not have revisited the admissibility of Barth's testimony for the reasons already mentioned, there are others. After the meaning of the Third Circuit's "reasonable" period within which to retry Appellee was defined in an order of the Federal District Court, on September 17, 1999, the Commonwealth did not move for either reconsideration or clarification. *McCandless,* 1999 U.S.Dist. LEXIS at 3. Not until November 26, 1999, three days before the 120 days expired on November 29, 1999, and more than six months after the Third Circuit's decision was entered was a challenge mounted. Even then the Commonwealth merely requested a stay pending appellate consideration of the trial court's grant of the motion *in limine.* The argument ad-

vanced was not substantive, but merely averred that prosecution of Appellee would be substantially handicapped by the absence of Barth's testimony. The Commonwealth had never filed either a motion for reconsideration of or an appeal from the grant of conditional *habeas* relief, *id.* at 5 n. 4., and the federal district court notes that the Commonwealth's request for a stay failed to make the required showing that there was any likelihood of success on the merits of an appeal. *Id.* at 5–6.

¶ 16 Finally, in its motion for reconsideration of the instant trial court decision, the Commonwealth advanced only the theory that Appellee had waived his right to assert a *Bazemore* claim. Although it now argues that there could have been no waiver of the law of the case theory as it is non-waivable, the Commonwealth continues to ignore the effect of a grant of *habeas corpus* relief. I would find that because, in this instance, so profoundly is the law of the case affected by the grant of *habeas* relief, it does not govern.[14]

¶ 17 Even assuming that the rules of the law of the case did apply, they would permit the trial court to revisit the admissibility of Barth's testimony. The law of the case is overridden where exceptional circumstances exist, such as an intervening change in the facts, evidence or controlling law, or where the prior holding was clearly erroneous such as to create a manifest injustice if followed. *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326, 1332 (1995). The original trial court found that because defense counsel was able to elicit

from Barth that he had given a statement to police which implicated Appellee, that he was testifying pursuant to an agreement, and that he had not been convicted of any crimes involving dishonesty, cross examination had been full and fair. The trial court here ruled that having been denied both Barth's statement to police and his agreement with the Commonwealth, Appellee lacked a full and fair opportunity to cross examine Barth, and was therefore "unable to challenge his credibility and potential bias." (Trial Ct.Op. at 7). Recent case law of both this Court and our Supreme Court represent changes in controlling authority on these points which permit the reexamination of Barth's testimony, demonstrate the accuracy of the trial court's determination, and illuminate the injustice which would have occurred had the original decision been allowed to stand.

¶ 18 *Commonwealth v. Johnson,* 758 A.2d 166 (Pa.Super.2000), involved a motion *in limine* filed by the defendant/appellee in a murder case to preclude admission of the preliminary hearing testimony of a witness who had died prior to trial. The trial court found that in failing to supply the defendant with certain statements the witness had made to police, the Commonwealth had deprived him of impeachment material, and thus of the opportunity to perform a full and fair cross examination.

¶ 19 The undisclosed material in *Johnson* consisted of information concerning the victim's drug use inconsistent with the

---

**14.** The Majority asserts that this finding is "not grounded in case law, statute or rule." (Majority Opinion at 717). I would point out again the conclusion reached by the Third Circuit after considering only Barth's availability, that Appellee's Sixth Amendment rights were violated. The law requires that both prongs of *Bazemore* must be satisfied for the hearing testimony to be used. There is no

dispute now that at least one was not, despite the contrary rulings of the trial court and this Court. Further, no extension of that finding, logical or otherwise, would permit Appellee to relitigate the issues which the federal court declined to address, as none are implicated in the Sixth Amendment violation expressly found to have occurred, and on which basis *habeas corpus* relief was granted.

witness' preliminary hearing testimony. We found that this information was vital impeachment evidence since it implied that a person other than the appellee might have been the murderer.

¶ 20 Here, the trial court noted that Barth was the only eyewitness to the shooting, and that his statement to police was never given to Appellee so as to permit cross examination on its contents because the original trial court had held that the Commonwealth was under no obligation to provide it.[15] This Court's ruling in *Johnson,* that impeachment material is "particularly important where the Commonwealth's entire case hinges upon the testimony of the unavailable witness," *id.* at 169, is particularly applicable here.

¶ 21 As the Third Circuit observed

[i]n this case, [Appellee's] interest in confrontation with Barth could not have been higher. He was charged with an offense which carried a mandatory life sentence, and the prosecution was seeking the death penalty. Barth was the prosecution's only eye witness to the alleged shooting, and his testimony was the only substantial evidence implicating [Appellee] in the murder. These factors would have made full and fair cross examination before the jury of crucial importance to [Appellee] even if Barth had been a wholly impartial witness. But he was not. He had been charged with and arrested for the same homicide and had reached an agreement with the prosecution that he would go free if he testified against [Appellee] and Hartey and they were convicted.

*McCandless,* 172 F.3d at 266.

¶ 22 Appellee was denied access to the principal source of evidence against him, a person who himself may well have been guilty of the crime. Indeed, Barth, having given his name as McCandless at the time of his arrest, was held for trial on homicide charges following his March 1981 preliminary hearing. Only in September of 1981, after he had given authorities the undisclosed statement implicating Appellee and Hartey, was an agreement struck resulting in his release. Thus, apparently, a *prima facie* case against Barth existed even in the absence of an inculpatory statement, or the statement was, despite Barth's denial, a confession of some sort. In either event, counsel was not permitted to inquire of the detective in charge of the investigation whether Barth had given any other statement.[16] To the court's question as to whether the detective had received any statement which was inconsistent, other than in small details, from the one refused to counsel, the detective responded that he did not recall. Thus, pursuant to the principles enunciated in *Johnson,* I believe the trial court's conclusion here was correct.[17]

15. The original trial court found sufficient as indicia of full and fair cross examination the extraction of the following facts: 1) that Barth had given a statement (contents unknown) to the investigating detective; 2) that he was testifying pursuant to an agreement (provisions unknown) reached in 1981 which implicated Appellee and Hartey, exculpating himself; 3) that he had never been convicted of any crimes involving dishonesty. *See* Trial Ct.Op., 5/17/85, at 28.

16. The Majority argues that "[n]either the trial court nor [Appellee] offer a basis for finding the 'vital impeachment evidence,' such as

the type proffered in *Johnson,* was withheld in this case." (Majority Opinion at 719). However, after reciting the circumstances of *Bazemore, supra,* and *Commonwealth v. Smith,* 436 Pa.Super. 277, 647 A.2d 907 (1994), the trial court states "The facts in the instant case could not be any closer to these." (Trial Ct.Op. at 6). The basis for the trial court's position resides in the comparison.

17. Although the Commonwealth asserted at oral argument that Barth's statement and his testimony were not inconsistent, it failed to include either in the certified record on appeal. And, although the record has been sup-

¶ 23 Equally compelling if not more so, is our Supreme Court's decision in *Commonwealth v. Strong*, 563 Pa. 455, 761 A.2d 1167 (2000), a death penalty case concerned with the Commonwealth's failure to disclose the details of an agreement it had made with an eyewitness/accomplice in exchange for his testimony. Although the appellant had specifically requested this material prior to his trial in 1984, the Commonwealth denied the existence of an agreement, as the *quid pro quo* for the witness' testimony had not been reduced to writing; the trial court therefore concluded that no actual deal had been struck. The agreement was only made available for the first time prior to a hearing on the appellant's post conviction relief petition in 1997.

¶ 24 Subsequent to his appearance at the appellant's trial and the ensuing conviction and death sentence, the witness entered a plea of guilty to murder and kidnapping in exchange for a sentence of 40 months incarceration. On direct appeal, our Supreme Court reversed, holding that where the Commonwealth, despite the appellant's multiple requests, had denied the existence of any arrangement relevant to a witness' adverse testimony, a *Brady*[18] violation, that is, an infringement of due process where evidence favorable to the accused is withheld, occurs.

¶ 25 Our Supreme Court held in *Strong* that

> [e]xculpatory evidence favorable to the accused is not confined to evidence that reflects upon the culpability of the defendant. Exculpatory evidence also includes evidence of an impeachment nature that is material to the case against

the accused. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). As the court in *Napue* sagely observed "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying that a defendant's life or liberty may depend." *Id.* at 269, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217. Any implication, promise or understanding that government would extend leniency in exchange for a witness' testimony is relevant to the witness' credibility. [*Giglio v.*] *United States V. Giglio*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). As *Brady* and its progeny dictate, when the failure of the prosecution to produce material evidence raises a reasonable probability that the result of the trial would have been different if the evidence had been produced, due process has been violated and a new trial is warranted. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

*Id.* at 1171.

¶ 26 Here, as in *Strong*, Appellee was never provided with a copy of the agreement, the existence of which was not disputed, between Barth and the Commonwealth. Barth was originally arrested for and charged with the murder. Although, unlike Strong, Barth confirmed that he was testifying against Appellee pursuant to the agreement, no mention was made of his release on a reduced bail. Nor was counsel permitted to explore that he failed to report, as the agreement required, on a number of occasions, and was finally ar-

plemented with the preliminary hearing testimony, absent the statement there is still no basis for comparison. Given the probable nature of the formation in Barth's statement,

any assumptions regarding its particulars speculative at best.

18. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

rested on a bench warrant and jailed. Further, the jury was never made aware that he had been released again on the same (unfulfilled) bail conditions after his appearance at Appellee's preliminary hearing. *McCandless*, 172 F.3d at 267. Clearly the terms of an agreement entered into under these circumstances made confrontation with the witness of the utmost importance.

¶ 27 In *Strong*, the Court opined: "Given that James Alexander is the key witness who puts the gun in the appellant's hand at the moment of the murder, his credibility was decisive to the jury's finding as to appellant's guilt." *Strong*, 761 A.2d at 1175. Were Barth's name to be substituted for Alexander's and Appellee

for Appellant Strong, the identical situation would obtain along with an equivalent denial of the means to test Barth's credibility. The handicap placed on conducting any valid test of the witness' credibility by the absence of the agreement was compounded by Appellee's failure to receive a copy of Barth's criminal history.[19]

¶ 28 For the foregoing reasons, I would affirm the decision of the trial court.

---

**19.** The Majority finds that *Strong* and *Johnson* "do not represent a change controlling law, only a reaffirmation of existing law." (Majority Opinion at 720.) However, on the basis of then existing law, both the trial court and this court ruled against defense requests for the pertinent documents, rulings posited as the law of the case. The changes rung by *Strong* and *Johnson* could, I believe, have compelled a different result.