J-A03012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| STEVEN FREDRICK STOKES JR. | : | |
| | : | |
| Appellant | : | No. 1065 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 6, 2017
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0006004-2016

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 16, 2020**

Steven Fredrick Stokes, Jr., appeals *nunc pro tunc* from the judgment of sentence, entered in the Court of Common Pleas of York County, after a jury convicted him of four counts of robbery[1] and one count each of possession of a firearm (persons not to possess),[2] aggravated assault,[3] theft by unlawful taking,[4] and giving false identification to law enforcement authorities.[5]  Upon careful review, we affirm.

---

[1] 18 Pa.C.S.A. § 3701(a)(1).

[2] 18 Pa.C.S.A. § 6105(a)(1).

[3] 18 Pa.C.S.A. § 2702(a)(1).

[4] 18 Pa.C.S.A. § 3921(a).

[5] 18 Pa.C.S.A. § 4914(a).

On August 10, 2016, Saquan Darby and his coworkers, Alexa Moody, Brianna Strickland, and Actavia Weeks, were socializing outside of Moody's house when Stokes approached them brandishing a gun. N.T. Trial, 9/11/17, at 75-76. Stokes pointed his gun at each of their faces and demanded they give him everything they had. *Id.* at 77-79, 213. After taking Darby's cell phone, wallet, and watch, Stokes ordered Darby to lay flat on his stomach with his face on the ground, arms extended, and fingers spread; Darby complied. *Id.* at 79-81, 213-14. With Darby on the ground, Stokes frisked the three women, groping their breasts and genitals, but none had anything on them of value. *Id.* at 81, 102, 117, 220. Stokes began to walk away, but turned around after a few steps, said "something along the lines of, '[as a] matter of fact . . . fuck it,'" and shot Darby in the head as he lay on the ground. *Id.* at 83, 103, 118, 222. Once Stokes walked away again, Moody called the police from inside her home and Strickland rushed Darby to the hospital. *Id.* at 84, 104. Minutes after the shooting, Darby told Officer Daniel Kling that Stokes shot him in the head. *Id.* at 230-34. Darby later told hospital personnel that he was shot as he attempted to run from Stokes. *Id.* at 112, 125.

Officer Alex Sable responded to a report of a shooting over police dispatch; he quickly located Stokes, who matched the description of the suspect. *Id.* at 239-42. When Stokes saw Officer Sable approach him, he fled. *Id.* at 242-43. After a foot chase involving multiple officers, Stokes was apprehended and taken into police custody. *Id.* at 243-44, 274. Officer

Christopher Husted found an empty gun in Stokes' front pocket. *Id.* at 274-75. When Officer Husted asked Stokes to identify himself, Stokes said that his name was "Albert Philistine" or "Allen Philistine." *Id.* at 278. Stokes also told Officer Husted that he had not fired a gun in years. *Id.* Stephanie Horner, a gunshot residue expert, testified that material removed from Stokes' hand just minutes after the report of the shooting tested positive for gunshot residue. *Id.* at 193-94.

Following Stokes' arrest, the trial court held a preliminary hearing on September 14, 2016, during which Darby testified that he was lying flat on his stomach when Stokes shot him. N.T. Preliminary Hearing, 9/14/16, at 6. Attorney Erin Thompson from the Public Defender's Office cross-examined Darby without objection. *Id.* at 8-16. However, because Darby did not sign medical releases until the day of the preliminary hearing, neither the Commonwealth nor defense counsel had, at the time of that hearing, a copy of Darby's statement to hospital staff indicating that he said he was shot as he attempted to run from Stokes. Trial Court Opinion, 6/8/18, at 1-4.

After the preliminary hearing, the Commonwealth lost contact with Darby, and he was unavailable for trial despite numerous attempts to contact and locate him.[6] *Id.* at 1-2. The Commonwealth filed a motion in *limine*

---

[6] The Commonwealth took several steps to locate Darby, including calling Darby on the phone, sending contact letters to his last known address, locating and calling the mother of Darby's son with instructions to contact the District Attorney's office, sending detectives to Darby's last known address with

seeking admission of Darby's preliminary hearing testimony, which the trial court granted after a hearing on September 8, 2017.

At trial, the Commonwealth read the transcript of Darby's preliminary hearing testimony into the record without objection from Stokes. N.T. Trial, 9/11/17, at 206-24. Stokes admitted into evidence Darby's hospital report, which contained his prior inconsistent statement, and the parties stipulated to the jury that Darby informed hospital officials that he was shot while trying to run from Stokes. *Id.* at 292-93. Ultimately, on September 14, 2017, the jury found Stokes guilty of the above-mentioned crimes.

On November 6, 2017, the court sentenced Stokes to an aggregate term of imprisonment of 20-40 years. Stokes filed a post-sentence motion, which the court denied on March 1, 2018. Stokes timely filed a notice of appeal. Stokes' appeal was dismissed on January 22, 2019, for his then-appellate-counsel's failure to file a brief. On May 29, 2019, Stokes timely filed a PCRA petition to reinstate his appellate rights *nunc pro tunc*, which the court granted on June 7, 2019. On June 28, 2019, Stokes timely filed a notice of appeal, *nunc pro tunc*, to this Court. Both the trial court and Stokes complied with Pa.R.A.P. 1925.

---

instructions to contact the District Attorney's office, utilizing internet databases including Lexis-Nexus/Accurint and Visual Alert, and contacting local police in the jurisdiction they believed Darby may have been located. Trial Court Opinion, 6/8/18, at 1-2. Stokes conceded that Darby was unavailable for trial and that the Commonwealth's attempts to contact and locate him constitute a good faith effort. *Id.* at 3.

On appeal, Stokes raises the following issue for our review: "Did the trial court err when it permitted the Commonwealth to enter into the record [Darby's] testimony from [Stokes'] preliminary hearing, even though after the preliminary hearing and prior to trial, new impeachment evidence involving [Darby] came to light[?]" Brief of Appellant, at 5.

Instantly, Stokes claims that the trial court erred in granting the Commonwealth's motion in *limine* to admit Darby's preliminary hearing testimony.[7] *Id.* at 10. Stokes argues that he was denied a full and fair opportunity to cross examine Darby at the preliminary hearing, in violation of his constitutional right to confront witnesses against him, because at that time, Stokes was "denied access" to "vital impeachment evidence[;]" specifically, Darby's statement to hospital personnel. *Id.* at 16.

It is well-established that,

> [u]nder both our federal and state constitutions, a criminal defendant has the right to confront and cross-examine witnesses against him at trial. However, it is [also] well-established that an unavailable witness' prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the criminal defendant had counsel and a full opportunity to cross-examine that witness at the prior proceeding. . . . The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing stage as extensively as he might have done at trial. However, where the defense, *at the time of the preliminary hearing*, was *denied* access

---

[7] "A ruling on a motion in *limine* on record is sufficient to preserve the issue for appeal, without renewal of the objection or offer at trial." **Trach v. Fellin**, 817 A.2d 1102, 1107 n.3 (Pa. Super. 2003) (en banc).

> to vital impeachment evidence, a full and fair opportunity to cross-examine the unavailable witness may be deemed to have been lacking at the preliminary hearing. The opportunity to impeach a witness is particularly important where the Commonwealth's entire case hinges upon the testimony of the unavailable witness.

*Commonwealth v. Johnson*, 758 A.2d 166, 169 (Pa. Super. 2000) (emphasis added) (internal citations omitted); *see also* Pa.R.E. 804(b)(1) (governing admissibility of unavailable witness' prior testimony); *Crawford v. Washington*, 541 U.S. 36 (2004) ("Where testimonial evidence is at issue[,] . . . the Sixth Amendment demands what the common law require[s]: unavailability and a prior opportunity for cross examination.").

Stokes and the Commonwealth agree that this court's standard of review for a trial court's ruling on a motion in *limine* is an "evidentiary abuse of discretion standard." Brief of Appellant, at 4 (quoting *Commonwealth v. Zugay*, 745 A.2d 639, 644-45 (Pa. Super. 2000)); Brief of Appellee, at 5 (quoting *Crespo v. Hughes*, 167 A.3d 168, 177 (Pa. Super. 2017)).[8] However, we have explained that "[w]hether [an appellant] was denied [his] right to confront a witness under the [C]onfrontation [C]lause of the Sixth Amendment is a question of law for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Yohe*, 39 A.3d 381, 382 (Pa. Super. 2012).

At the hearing on the motion in *limine*, the court explained: "the only issue is whether or not the fact that [the hospital] report did not become

---

[8] Unlike the matter *sub judice*, neither of these cases dealt with any Confrontation Clause issue. *See Zugay*, *supra*; *Crespo*, *supra*.

known until after the hearing[] therefore disallows the Commonwealth from being able to introduce to the jury the alleged victim's preliminary hearing testimony."  N.T. Preliminary Hearing, 9/14/16, at 14.  Essentially, the issue is whether Stokes had a full and fair opportunity to cross-examine Darby at the preliminary hearing where Darby's prior inconsistent statements were not discovered by either party until after the hearing; if Stokes had such an opportunity, then the testimony was properly admitted.  **See Commonwealth v. Bazemore**, 614 A.2d 684, 686 (Pa. 1992) ("the opportunity to cross-examine must be fair given the circumstances of the particular matter") (emphasis removed).

Where, as here, the Commonwealth did not know of or possess Darby's prior inconsistent statement at the preliminary hearing, the Commonwealth did not deny Stokes access to that statement.  Accordingly, Stokes was not denied a full and fair opportunity to cross-examine Darby by the Commonwealth at the preliminary hearing, and he is entitled to no relief.  In **Commonwealth v. Leak**, 22 A.3d 1036 (Pa. Super. 2011), we held that where the prosecutor did not possess the victim's hospital records at the time of the preliminary hearing, the "record does not establish that the Commonwealth denied [appellant] access to the hospital records in question."  **Id.** at 1045.  Additional case law supports the conclusion that, for an appellant to be "denied" vital impeachment evidence such that his Sixth Amendment rights were violated, the Commonwealth must fail to turn over some evidence actually in its possession.  **See Bazemore**, **supra** (no opportunity for full and

fair cross-examination where "Commonwealth *knows*, *but does not disclose* to the defense at any time prior to the preliminary hearing . . . that the witness has made an inconsistent prior statement) (emphasis added); **Johnson**, **supra** (where Commonwealth *possesses but fails to disclose* witness' prior inconsistent statement, defendant is denied full and fair opportunity for cross-examination).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2020