J-A05045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANGEL LANECE JACKSON | : | |
| | : | |
| Appellant | : | No. 1108 WDA 2023 |

Appeal from the Judgment of Sentence Entered July 17, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007641-2021

BEFORE: MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:  **FILED: APRIL 1, 2025**

Appellant, Angel Lanece Jackson, appeals from the judgment of sentence imposed by the Allegheny County Court of Common Pleas after a jury found her guilty of endangering the welfare of children ("EWOC").[1]  On direct review, she alleges that the admission of the victim's preliminary hearing testimony at the jury trial, following the victim's death, violated her constitutional right to confrontation and challenges the legality of her sentence.  Upon review, we vacate the judgment of sentence and remand for a new sentencing hearing.

On August 5, 2021, Police Officer Samuel Bostic went to a home in the 1800 block of Cornell Street in McKeesport, Pennsylvania, in response to a 9-

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 4304(a)(1).

1-1 call that was recorded at 1:07 p.m. *See* N.T., 5/23/23, 20-22. An anonymous caller informed the 9-1-1 operator that a juvenile in that home had called them and, in turn, they made the 9-1-1 call. *Id.* at 21. The caller reported that a fourteen-year-old, K.T., had been "pistol-whipped by her aunt with a gun seen on FaceTime." *Id.* at 22. Moreover, the transcript of the call included, "She has been torturing her all day, bruises on her face. Actor is Angel Jackson. Complainant is waiting at Cornell [Street]. There is also a juvenile male in the home." *Id.*

Appellant, who was thirty-four years old, answered the door at the home. *See* N.T., 5/23/23, 22, 49. Appellant told Officer Bostic that she had disciplined K.T. because K.T. had been smoking marijuana. *Id.* at 23. She admitted to hitting K.T. in the face with her fists. *Id.* Officer Bostic asked to speak with K.T. and observed bruising around her face. *Id.* He also recovered from Appellant a loaded firearm that had been in a dresser drawer in Appellant's bedroom. *Id.* at 25-26, 32. K.T. told Officer Bostic that Appellant struck her with the gun. *Id.* at 31.

After K.T. died in October 2022 as a result of events unconnected with this case, the Commonwealth filed a motion to compel the defense to produce a copy of an audio recording of the preliminary hearing at which K.T. had testified. *See* Commonwealth Motion to Compel, 11/3/22, ¶¶ 1, 3, 5, 9-11. The trial court granted that motion on February 1, 2023, and denied a defense motion for reconsideration on February 15, 2023. *See* Order (Motion to

Compel), 2/1/23, 1; Defense Motion to Reconsider, 2/6/23, 1-3; Order (Motion to Reconsider), 2/15/23, 1.

On May 4, 2023, the Commonwealth filed a motion in *limine* seeking the admission of K.T.'s preliminary hearing testimony at trial. **See** Commonwealth Motion in *Limine*, 5/4/23, ¶¶ 2, 4-25. Appellant filed an answer, arguing that the preliminary hearing testimony should not be admitted because the defense was not provided with a full and fair opportunity for cross-examination of K.T. where there was "no mention in the affidavit of probable cause of any other witnesses present, [the] existence of photographs, or [ ] medical treatment at a hospital." Defense Answer to Motion in *Limine*, 5/10/23, ¶¶ 8-11, 13-20. The trial court granted the motion in *limine*. **See** N.T., 5/18/23, 4 (Trial Court: "Your motion is granted as to the admissibility, and you can cross-examine and argue in terms of the failure to produce medical records to a case worker or anybody else. I find that the base of our issue is to result in favor of the Commonwealth.").

On May 23, 2023, Appellant proceeded to a jury trial. The Commonwealth presented testimony from Officer Bostic and the preliminary hearing testimony of K.T. **See** N.T., 5/23/23, 5-6, 36-37 (court discussing the presentation of the preliminary hearing testimony to the jury); *id.* at 20-35 (Officer Bostic's testimony); *id.* at 37 (reference to the reading of K.T.'s preliminary hearing testimony by a trial court intern).

At the preliminary hearing, K.T. testified that, after Appellant found a video in her phone of her smoking, Appellant started "hitting [her] and then

- 3 -

hitting [her] with the gun." N.T., 2/6/21, 6. She specified that Appellant hit her face, more than once, with "balled up" fists. *Id.* at 6-7, 11. She recalled that Appellant told her son to get the gun. *Id.* at 7, 12. She testified that Appellant "was p[u]tting [the gun] against [her] head and yelling at [her]." *Id.* at 7-8. She asserted that Appellant struck her with the gun multiple times "all over [her] face." *Id.* at 8, 11-12. K.T. recalled that, afterwards, her head was throbbing, her face was swollen, and she was bleeding from the side of her head. *Id.* at 9, 13. She noted that a caseworker subsequently took her to a hospital. *Id.* at 9. On cross-examination, she testified that the police became involved in the incident because she had called them. *Id.* at 12.

Among the exhibits admitted at trial were photographs of K.T.'s injuries, that were taken at the police station on August 5, 2021, and of the firearm that was recovered from Appellant's home. *See* N.T., 5/23/23, 24-27, 34.

Appellant testified on her own behalf. *See* N.T., 5/23/23, 39-51. She explained that she became the caregiver for her niece, K.T., starting in 2020, after K.T.'s grandmother passed away, her mother lost parental rights, and her father "put[ ] her out." *Id.* at 39-40. She had K.T. undergo drug testing on August 4, 2021, and, on the next day, went through K.T.'s phone and found a video of K.T. smoking with a friend. *Id.* at 42. She recalled herself yelling at K.T. and telling K.T. about what she found in the phone. *Id.* at 43. After she told K.T. that "she wasn't going outside" and listed other things K.T. could not do, K.T. grabbed a bookbag and started to leave. *Id.* Appellant testified that she grabbed the bookbag and "yanked it back," at which point K.T.

allegedly charged at her to hit her. *Id.* Appellant testified that K.T. waived her arm and struck Appellant between her neck and shoulder. *Id.* In response, Appellant admitted to grabbing K.T. and striking her in her face. *Id.* at 44. Appellant agreed that she hit K.T. multiple times. *Id.* at 44 ("Honestly, I was not counting an amount of strikes. I know that it did not last long."); *id.* at 50 ("Q. How many times did you hit her? A. I didn't count, but I am assuming probably like no more than maybe three, two, three times."). Appellant alleged that she struck K.T. to stop K.T. from hitting her. *Id.* at 45. Appellant testified that K.T. then said that she was sorry and went to the bathroom, at which point the police knocked on her door. *Id.* at 45-46.

Appellant testified that the police left and returned twenty minutes later with her mother and sister. *See* N.T., 5/23/23, 46-47. She asserted that she told the officers that K.T. was not going to go with her father and told them to "lock [herself] up and call children services." *Id.* at 47. Appellant agreed that she willingly showed the officers where her firearm was located. *Id.* She denied that she had retrieved the gun and repeatedly struck her niece with it. *Id.* at 48.

After hearing the evidence, the jury found Appellant guilty of EWOC.[2] *See* N.T., 5/23/23, 79. On July 17, 2023, the trial court presided over a joint

_____

[2] The jury also found her not guilty of aggravated assault (18 Pa.C.S. § 2702(a)(4)), simple assault (18 Pa.C.S. § 2701(a)(2)), and recklessly endangering another person (18 Pa.C.S. § 2705). *See* N.T., 5/23/23, 79-80.

sentencing hearing for this matter, a separate matter at CP-02-CR-0007640-2021, which is pending before our panel at 927 WDA 2023, and a third matter at CP-02-CR-0007897-2020, in which Appellant entered a guilty plea on the same date. *See* N.T., 7/17/23, 2. In the instant case, the court sentenced Appellant to a three-year probation term to be served concurrently with equal and lesser probationary terms imposed in the other two matters. *Id.* at 7-8; Order (Sentencing), 7/23/17, 1. After the denial of a timely-filed post-sentence motion challenging the weight of the evidence, Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). *See* Post-Sentence Motion, 7/18/23, 1-3; Order (Post-Sentence Motion Denial), 8/21/23, 1; Notice of Appeal, 9/19/23, 1; Order (Rule 1925), 9/20/23, 1; Rule 1925(b) Statement, 12/11/23, 1-5.

Appellant presents the following questions for our review which we have reordered for purposes of our discussion:

[I.] Did the admission of K.T.'s preliminary hearing testimony at trial violate [Appellant's] confrontation rights?

[II.] Was the third-degree felony grading for endangering the welfare of children an illegal sentence?

Appellant's Brief, 5 (suggested answers and unnecessary capitalization omitted).

In the first reordered issue, Appellant claims that the trial court violated her constitutional right to confrontation when it granted the Commonwealth's

motion to admit the preliminary hearing testimony of the deceased victim. *See* Appellant's Brief, 19-26. She asserts that the prior testimony should not have been admitted because she did not have a full and fair opportunity to cross-examine K.T. at the preliminary hearing. *Id.* at 21. She reasons, as she did in her response to the Commonwealth's motion in *limine*, that she was deprived of an opportunity to cross-examine K.T. at the preliminary hearing because the affidavit of probable cause, in her possession at the time of the hearing, did not put her on notice of other witnesses to the incident (*i.e.*, her family members who came to the home after the police initially responded and left), photographs of K.T.'s alleged injuries, and the fact that K.T. received medical treatment at a hospital. *Id.* at 21-22. We conclude that Appellant has failed to demonstrate that she was denied any vital impeachment material at the time of K.T.'s preliminary hearing testimony and therefore agree with the trial court that relief should be denied. *See* Trial Court Opinion, 4/17/24, 11-12.

Whether the admission of the victim's preliminary hearing testimony violated Appellant's confrontation rights is a question of law. *See Commonwealth v. Brown*, 185 A.3d 316, 324 (Pa. 2018). Accordingly, our standard of review is *de novo*, and our scope of review is plenary. *Id.*

Here, the victim's preliminary hearing testimony was admitted at trial under the hearsay exception for former testimony at Pa.R.E. 804(b)(1) where the victim was – without dispute – an unavailable witness after she died between the preliminary hearing and the trial. *See also* Pa.R.E. 804(a)(4)

(declarant is considered unavailable as witness if they "cannot be present or testify at the trial or hearing because of," *inter alia*, "death").

"Admitting former testimony is subject to constitutional restraints arising out of the constitutional right to confront one's accusers." ***Commonwealth v. Grush***, 295 A.3d 247, 252 (Pa. Super. 2023). "If prior testimony is used at a proceeding, the opposing party, or a party in interest, must have had a full and fair opportunity to cross-examine the witness at the prior proceeding." ***Commonwealth v. Fink***, 791 A.2d 1235, 1245 (Pa. Super. 2002), ***citing Commonwealth v. Bazemore***, 614 A.2d 684, 685 (Pa. 1992), ***Commonwealth v. Johnson***, 758 A.2d 166, 169 (Pa. Super. 2000), and ***Commonwealth v. Smith***, 647 A.2d 907, 911 (Pa. Super. 1994).

In ***Bazemore***, our Supreme Court concluded that the Commonwealth could not introduce its unavailable sole witness's preliminary hearing testimony at trial where, at the time of the preliminary hearing, Bazemore's counsel was unaware that the witness had given a prior inconsistent statement, the Commonwealth was contemplating the filing of charges against the witness, which charges would have arose out of the same incident, and the witness had a prior criminal record. ***See Bazemore***, 614 A.2d at 687-89. In that matter, our Supreme Court held that the credibility of the unavailable witness was "undoubtedly of vital importance," and the defendant was denied a full and fair opportunity for cross-examination in the absence of an opportunity to test the veracity of the witness due to the denial of access to "vital impeachment evidence." ***Id.*** at 688.

Consistent with **Bazemore**, a defendant asserting a lack of a full and fair opportunity for cross-examination must establish that he or she was deprived of "vital impeachment evidence." **Commonwealth v. Cruz-Centeno**, 668 A.2d 536, 543 (Pa. Super. 1995). "Vital impeachment evidence" includes, *inter alia*, prior inconsistent statements of the witness or the witness's criminal record. **Id.**

In the instant case, unlike the situation in **Bazemore**, there is no demonstration that Appellant was denied any vital impeachment evidence at the time of her preliminary hearing. Appellant asserts that the Commonwealth's affidavit of probable cause did not put her on notice of "witnesses [ ] present during the incident, photographs of K.T.'s alleged injuries, or that K.T. went to the hospital for medical treatment." Appellant's Brief, 21. However, Appellant does not explain how advanced notice in those regards would have been useful for impeaching K.T.

As for the absence of information in the affidavit of probable cause about the existence of additional witnesses, she notes that Officer Bostic's preliminary hearing testimony mentioned "people from Ohio" being present in the home and asserts that she "had no opportunity during cross-examination to learn the identities or other information about these potential exculpatory witnesses." Appellant's Brief, 21-22. We know from Appellant's trial testimony that the "people from Ohio" was a reference to Appellant's mother and sister who had arrived at her home when the police returned twenty minutes after the initial response. **See** N.T., 5/23/23, 46. The absence of

information identifying Appellant's mother and sister in the affidavit of probable cause did not limit Appellant's opportunity to cross-examine K.T. because Appellant admitted at trial that she was present when they "showed up from Ohio." Thus, she was aware before the preliminary hearing who these "people from Ohio" were and any potential usefulness that her mother and sister offered as witnesses in the case. *Id.* These family members ultimately were never presented at trial, and it is unclear how they could have possibly been useful for impeachment purposes. Under any version of the events presented at the trial, Appellant's mother and sister were not present for the event that was the focus of K.T.'s preliminary hearing testimony: Appellant's alleged assault of her.

With respect to the photographs of K.T.'s injuries that were later admitted at trial, Appellant asserts, "As neither the affidavit nor the witnesses revealed the existence of photographs at the preliminary hearing, [she] could not fully and fairly question [ ] K.T. on her claims about the severity of the injuries." Appellant's Brief, 22. This statement in her brief utterly fails to convey that the photographs were vital impeachment evidence for purposes of cross-examining K.T. Even though these photographs were admitted into the evidentiary record at trial, Appellant has failed to ensure the presence of the photographs in the record certified for this appeal and has failed to discuss the photographs' contents or explain how they would have supported the finding of an inconsistency in K.T.'s preliminary hearing testimony that could have been a subject for impeachment.

Similarly, Appellant only makes conclusory assertions about the lack of medical records. *See* Appellant's Brief, 26 ("it is clear that the medical records and photographs could have helped to show that the injury and assault were not as severe as K.T. suggested at the preliminary hearing"). She appears to assume both the existence of relevant medical records and their usefulness for impeachment purposes and suggests, based only on their absence from discovery disclosures, that she was deprived of a full and fair opportunity to cross-examine K.T. at the preliminary hearing. *Id.* at 22 ("As [Appellant] did not learn the name of the hospital or receive medical records at any point during her case, she could not effectively cross-examine K.T. about the severity of her injuries or present information to disprove K.T.'s claims."). In her preliminary hearing testimony, K.T. testified that the extent of the medical treatment she received after the alleged assault was ice for the swelling while at an unidentified hospital. *See* N.T., 2/6/21, 9, 13. It is unclear what medical records would exist from such minimal treatment with ice, much less that that it would be vital where K.T.'s testimony made clear she suffered only bodily injury. Appellant offers no argument from which we can conclude that the Commonwealth was ever in possession of relevant medical records, that the Commonwealth withheld such records, or that the records would have been useful for impeachment.

Appellant merely suggests that she lacked the means for pursuing a total and comprehensive cross-examination of K.T. However, that assertion is insufficient to warrant relief. "[T]he test demands only [] a full and fair

opportunity for cross-examination. It does not demand a total and comprehensive cross-examination." *Grush*, 295 A.3d at 256. Because Appellant has not demonstrated that the additional witnesses, photographs, or medical records would have constituted vital impeachment evidence, we are unable to conclude that her confrontation rights were violated by the admission of K.T.'s prior testimony. Further, since we fail to discern any error, we conclude that Appellant is not entitled to relief on her first reordered issue. *See Brown*, *supra*.

In the second reordered issue, Appellant claims that her sentence is illegal because the grading of her EWOC conviction was premised on a finding that she created a substantial risk of death or serious bodily injury to the victim, and the trial court never instructed the jury to make a finding to that effect. *See* Appellant's Brief, 13-18. The Commonwealth agrees that Appellant is entitled to a vacation of her sentence and a remand for a new sentencing hearing so she can be resentenced for EWOC as a misdemeanor of the first degree rather than as a felony of the third degree. *See* Appellee's Brief, 11-22. We concur with the parties and remand for resentencing.

"A claim that the [trial] court improperly graded an offense for sentencing purposes implicates the legality of a sentence." *Commonwealth v. Graeff*, 13 A.3d 516, 517 (Pa. Super. 2011). Our standard of review for an illegal sentence claim is *de novo*, since the claim raises a pure question of law. *See Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011). Given that we have jurisdiction over this direct appeal, we may review the

instant illegal sentence claim, regardless of preservation below, because "challenges to an illegal sentence can never be waived and may be reviewed *sua sponte* by this Court." **Commonwealth v. Whalley**, 326 A.3d 948, 950 (Pa. Super. 2024) (citation omitted).

Provided that the victim of EWOC is not under the age of six at the time of the commission of the offense, section 4304(b) of the Pennsylvania Crimes Code sets a third-degree felony grading for the offense under subsection (a)(1) of the statute where "the actor engaged in a course of conduct of endangering the welfare of a child," or "the actor created a substantial risk of death or serious bodily injury" in the commission of the offense. 18 Pa.C.S. § 4304(b)(1)(ii)-(iii).

Here, Appellant was charged with, convicted of, and sentenced for committing EWOC as a felony of the third degree. **See** Order (Sentencing), 7/17/23, 1; N.T. Jury Trial, 5/23/23, 70 (jury charge on EWOC); **id.** at 79 (verdict); Bills of Information, 11/30/21, 1 (identifying EWOC charge as "Felony 3"). The Commonwealth pursued a third-degree felony grading of the EWOC charge under subsection 4304(b)(1)(iii) in the bills of information:

> Count: 2    ENDANGERING THE WELFARE OF CHILDREN   Felony 3
>
> The actor being a parent, guardian, or a person supervising the welfare of Jane Doe, a child, or children under 18 years of age, knowingly endangered the welfare of said child or children by violating a duty of care, protection or support, namely, inappropriate physical contact, and the actor's conduct created a substantial risk of death or serious bodily injury, in violation of Section 4304(a)(1) and (b)(1)(iii) of the Pennsylvania Crimes

Code, Act of December 6, 1972, 18 Pa.C.S. § 4304(a)(1) and (b)(1)(iii), as amended.

Bills of Information, 11/30/21, 1.

This Court has held that, in order to increase the grading of an offense, like EWOC, based on aggravating statutory factors, the Commonwealth must include the additional factors in the criminal information, and the trial court must instruct the jury on those factors. ***See, e.g., Commonwealth v. Rivera***, 255 A.3d 497, 512-515 (Pa. Super. 2021) (holding Rivera's third-degree felony EWOC charge was improperly graded "where the Commonwealth's information did not specifically allege, and the court did not specifically instruct the jury" regarding either of the factors identified in 18 Pa.C.S. § 4304(b)(1)(ii)-(iii)), ***reversed in part on other grounds***, 296 A.3d 1141 (Pa. 2023); ***Commonwealth v. Popow***, 844 A.2d 13, 16-18 (Pa. Super. 2004) (same result addressing a former version of the EWOC statute).

While the bills of information in this case specified the appropriate factor under subsection 4304(b)(1)(iii) for a third-degree felony grading of the EWOC charge, the trial court did not address that factor in its jury instruction on EWOC:

> Second, endangering the welfare of a child. To find the defendant guilty of this offense, you must find that it has been proven beyond a reasonable doubt that the defendant endangered the welfare of a child by violating the duty of care, protection or support; second, that the defendant endangered the welfare of the child knowingly and that she was aware and practically certain that the conduct would cause this particular result; and third, that the defendant was at the time parent, guardian or person

- 14 -

supervising the welfare of the child under the age of 18; and four, that the child was under the age of 18 at the time of the claim.

If you find that these elements are proven beyond a reasonable doubt then you should find the defendant guilty of that offense, and if not, you must find the defendant not guilty.

N.T., 5/23/23, 70 (unnecessary capitalization omitted).

In **Rivera**, we noted that "we may not assume that the jury found" one of the aggravated statutory factors for a third-degree felony grading for EWOC, "especially where they were not charged on those terms." **Rivera**, 255 A.3d at 513. Because the jury in this case was never instructed on the subsection 4304(b)(1)(iii) factor, the third-degree felony grading for the EWOC conviction was improper, the sentence imposed is illegal, and Appellant is entitled to resentencing. In the absence of any jury instruction concerning an aggravated factor for an increased grade for the EWOC charge, Appellant could have only been sentenced for the offense as a misdemeanor of the first degree under the default grading provision under subsection 4304(b)(1)(i) ("An offense under this [sub]section constitutes a misdemeanor of the first degree.").

For these reasons, we vacate Appellant's judgment of sentence and remand for resentencing on the EWOC conviction graded as a first-degree misdemeanor.

Judgment of sentence vacated. Case remanded with instructions. Jurisdiction relinquished.

- 15 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/1/2025